IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GENEVA CRAIG,**                                         Case 1:15 CV 671

    Plaintiff,

    v.                                                         Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                  MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Geneva Craig ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to the jurisdiction of the magistrate pursuant to 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 12). For the reasons stated below, the undersigned affirms the Commissioner's decision to deny benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on May 9, 2011, alleging an onset date of August 1, 2003. (Tr. 164-74). Plaintiff applied for benefits due to post-traumatic stress disorder and lower back and knee injuries. (Tr. 53). Her claims were denied initially and upon reconsideration. (Tr. 53-106). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 125). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on June 26, 2013, after which the ALJ found Plaintiff not disabled. (Tr. 7-23, 31-52). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the

Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on April 7, 2015. (Doc. 1).

## FACTUAL BACKGROUND[1]

*Personal Background and Testimony*

Born June 23, 1955, Plaintiff was 58 years old as of the hearing date. (Tr. 53). She completed high school and had a one-year radio communication course while she was in the Army. (Tr. 35-36). She lived in a house with two other adults but she previously lived alone. (Tr. 41, 213, 221). She had past work as a housekeeper and house cleaner. (Tr. 38, 50).

Plaintiff reported she was capable of doing most self-care, washing dishes, cleaning her room, doing her laundry, and performing light shopping; but she could only make frozen meals and rarely cooked. (Tr. 41-44, 215, 221-24). She testified she liked to go fishing but did not go any longer because she "ha[d] no way." (Tr. 44). Plaintiff also reported that she preferred to stay at home because she had been raped at a prior job. (Tr. 45-46). However, she stated she attended church and went with her niece to play Bingo. (Tr. 45, 217). She also testified that she watched T.V. and sometimes read. (Tr. 213, 221). Plaintiff also recalled a workplace accident when steel stages fell on top of her. (Tr. 46).

She testified to pain in her lower back, hip, and lower leg on the right-side that caused difficulty getting up or down stairs. (Tr. 41-42, 47). She also reported using a cane and brace. (Tr. 219). Because she did not have insurance, Plaintiff did not receive regular medical treatment or medication; although, she did take over-the-counter pain relievers every day. (Tr. 47). She stated the pain caused difficulty walking and standing, and she reported only being able to walk for a

---

1. Plaintiff's appeal focuses solely on her physical limitations; as such, all other issues are waived. *See Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990). Thus for the sake of brevity, the factual background summarized herein will only include evidence related to her physical limitations.

2

half-hour at a time. (Tr. 48). Plaintiff's main complaint was her pain; she believed this prevented her from working. (Tr. 49).

*Relevant Medical Evidence[2]*

From 2004-2013, Plaintiff visited the emergency room on over 25 occasions for a multitude of problems but she only reported back pain once. (Tr. 269-90, 307, 326-28, 347-61, 375-83, 408-09, 420-21, 430-31, 439-41, 451, 466, 481, 500, 510-11, 518, 521-25, 558-59). At all these other visits, Plaintiff had normal musculoskeletal exams and no reports of low back pain. (Tr. 270, 276, 307, 362, 364, 377, 383, 409-10, 421, 431, 451-52, 456, 466, 470, 522). It was noted specifically on many occasions that she had no peripheral edema, unremarkable extremities, full muscle strength and range of motion, and a non-tender back. (Tr. 264, 269, 275, 278, 307, 329, 384, 452, 456, 467, 470, 482, 500, 518, 521). Further, these exams showed no neurological deficits with intact reflexes. (Tr. 269, 270, 276, 307, 326-28, 347, 372, 456, 522, 545-47).

Twice in early 2013, Plaintiff visited the emergency room with left-side neck pain which caused reduced range of motion in her neck; these were diagnosed as muscle spasms. (Tr. 517-18, 520-23). The only reported incident of low back pain came in September 2013, when Plaintiff stated she hurt her back lifting heavy boxes, which weighed over twenty pounds, at work. (Tr. 558). Plaintiff stated that Tylenol resolved her pain and she had a good range of motion on examination. (Tr. 558-59). The doctor did not recommend x-rays and diagnosed Plaintiff with muscle strain. (Tr. 559).

---

2. The majority of Plaintiff's submitted medical records are for complaints that are unrelated to the current claim of low back and knee pain. Thus, a large part of the medical record – as pertains to these irrelevant conditions – has been excluded and the Court has only summarized notations which relate to her current claims.

*Consultative Examiners*[3]

Dorothy Bradford, M.D., performed a consultative examination on August 13, 2013; she found Plaintiff's subjective reports reliable. (Tr. 533-45). Dr. Bradford's report of Plaintiff's muscle testing revealed full strength and range of motion in both the lower and upper extremities. (Tr. 533). She also observed no muscle spasm, clonus, or atrophy. (Tr. 534). Plaintiff had normal range of motion in her cervical spine and bilaterally in her upper and lower extremities, but had slightly reduced range of motion in her dorsolumbar spine. (Tr. 535-36). She also observed normal station, posture, and gait; noted Plaintiff did not utilize a cane; and had a negative Romberg test. (Tr. 545). Although, Dr. Bradford reported mild kyphosis[4], she also found no spinal instability and normal strength and tone. (Tr. 545).

Dr. Bradford opined Plaintiff could occasionally lift/carry up to twenty pounds and continuously lift/carry 21-100 pounds[5]; she based these restrictions on "low back pain". (Tr. 537). She further opined Plaintiff could sit for eight hours at a time, stand/walk for 30 minutes at a time, and could stand/walk for one hour in an eight-hour day; however, Dr. Bradford did not believe Plaintiff needed a cane. (Tr. 538). She also concluded Plaintiff had no foot restrictions and no manipulative limitations except that she could only occasionally push or pull. (Tr. 539). Dr. Bradford found Plaintiff could never kneel, crouch, or crawl; could occasionally stoop and climb stairs or ramps; and had no restriction in balancing or climbing ladders or scaffolds. (Tr. 540). Dr. Bradford did not identify the medical basis for these restrictions. (Tr. 540). She also restricted

---

3. The consultative examination report of Deborah Ann Koricke, Ph.D., is omitted since Plaintiff does not challenge the mental restrictions. The report can be found at Doc. 10, at 336-45.

4. Kyphosis is a forward rounding of the back, usually an exaggerated rounding. MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/kyphosis/basics/definition/con-20026732, (last visited June 28, 2016).

5. This designation is most likely a clerical error since in the narrative part of her opinion, Dr. Bradford concludes Plaintiff is not able to lift more than twenty pounds. (Tr. 545). This corresponds to her prior restriction which limited Plaintiff to only occasional lifting of twenty pounds.

4

Plaintiff from unprotected heights and moving mechanical parts, again without identification of a medical basis. (Tr. 541). Dr. Bradford concluded Plaintiff was not restricted in any activities of daily living and made a final note that she probably had degenerative joint disease. (Tr. 542, 545).

*State Agency Reviewers[6]*

On February 29, 2012, and May 11, 2012, the state agency physicians found initially that the evidence submitted did not establish a medically determinable impairment. (Tr. 55-56, 59-60, 74-76). On reconsideration in August 2012, Lynne Torello, M.D., found Plaintiff's "physical conditions do not pose more than minimal limitations on her ability to work" and she had insufficient evidence to make any further findings. (Tr. 85).

*ALJ Decision*

In November 2013, the ALJ concluded Plaintiff had the severe impairments of an affective disorder, obesity, and low back pain; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 13-17). The ALJ then found Plaintiff had the physical RFC to perform less than a full range of light work. (Tr. 17). Specifically, she could lift/carry up to ten pounds frequently and up to twenty pounds occasionally; sit, with normal breaks, for about six hours in a normal workday; and stand/walk, with normal breaks, for about six hours in a normal workday. (Tr. 17)[7]. The VE found that Plaintiff's past work as a housekeeper was an unskilled job that is performed at a light exertion level and her work as house cleaner was an unskilled job that is generally performed at a heavy exertion level, but Plaintiff performed it as a medium level. (Tr. 22). Considering the VE testimony and Plaintiff's age, work experience, and RFC, the ALJ found Plaintiff could perform work as a housekeeper. (Tr. 22).

---

6. The psychological state agency reviewer's opinion has also been excluded. (*See* Tr. 86-89).
7. The mental RFC has been omitted. (*See* Tr. 17).

5

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

    3.      Does the severe impairment meet one of the listed impairments?

    4.      What is claimant's residual functional capacity and can claimant perform past relevant work?

    5.      Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The Commissioner considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

In her sole assignment of error, Plaintiff argues the ALJ erred in his RFC determination. (Doc. 14, at 6-11). Mainly, Plaintiff contends that inconsistencies both within the consultative examiner's report and between the report and the other evidence in the record resulted in a flawed RFC. Further, she asserts the ALJ should have resolved these inconsistencies through another consultative examination, an order for x-rays, or inquiry to Dr. Bradford before making a finding on Plaintiff's RFC.

### *RFC*

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. The RFC

7

determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5. If the ALJ's decision was supported by substantial evidence, this Court must affirm. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ stated the majority of the physical RFC was based on the opinion of consultative examiner, Dr. Bradford. (Tr. 21). However, the ALJ did not credit the entirety of Dr. Bradford's opinion; specifically, the limitation on Plaintiff's ability to stand/walk. (Tr. 21). First, the ALJ discussed the myriad normal objective findings in the record – she never reported back pain and had no evidence of any back pain in almost ten years of medical records. (Tr. 269-90, 307, 326-28, 347-61, 375-83, 408-09, 420-21, 430-31, 439-41, 451, 466, 481, 500, 510-11, 518, 521-25). Particularly, even when she did report back pain, neither the emergency room doctor nor the consultative examiner recommended that Plaintiff get an x-ray of her low back. (Tr. 543, 559). Further, Plaintiff reported that over-the-counter Tylenol resolved her pain. (Tr. 558-59). These facts are indicative of a non-severe condition.

Second, the ALJ noted the consultative examiner had no objective evidence of her restrictions: her physical examination revealed full strength and range of motion in all areas (except reduced range of motion in the dorsolumbar spine); normal station, posture, and gait; no spinal instability; and normal spinal strength and tone. (Tr. 533-36, 545). These observations of normal strength and gait do not support stand/walk restrictions. Internal inconsistencies are a valid basis to discount a medical opinion; however, in light of the absence of other objective evidence in the record, the ALJ did not err by not fully crediting Dr. Bradford's opinion. Further, the ALJ's uncontested negative finding regarding Plaintiff's subjective complaints (the likely basis of Dr.

Bradford's restrictions) coupled with the lack of objective evidence, is particularly relevant in evaluating the proposed restrictions. (Tr. 20).

Next, Plaintiff argues Dr. Bradford's opinion contained an internal inconsistency regarding how much weight she could lift which went unresolved by the ALJ. This is true; the opinion stated at different parts that Plaintiff could lift a maximum of twenty pounds occasionally and continuously lift up to 100 pounds. (Tr. 537, 545). The Court finds this probable clerical error has no detrimental effect on Plaintiff's RFC. The ALJ concluded that Plaintiff could only lift/carry twenty pounds occasionally in the RFC – a conclusion consistent with the consultative examiner's narrative and check-box reports. (Tr. 17, 537, 545). Further, although the inconsistency is present the ALJ's finding acknowledged Plaintiff's reduced lift/carry abilities and did not prejudice the Plaintiff. Thus, Dr. Bradford's inconsistent response is irrelevant.

Subsequently, Plaintiff alleged the ALJ should have performed further investigation into Plaintiff's claim by either ordering another consultative examination or obtaining x-rays of her lower back and without doing so, the RFC is not a fair evaluation of Plaintiff. She provides no legal support for this argument. In this case, the ALJ had already requested a consultative examination which returned generally normal physical findings; observations that were consistent with other medical evidence in the record. Furthermore, the ALJ acknowledged and assumed that an x-ray of Plaintiff's back would likely show some degenerative changes due to her age and obesity. (Tr. 14). Plaintiff made no attempt to prove that the existing evidence warranted further investigation or that the ALJ abused her discretion in not ordering further examinations of Plaintiff. *See Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 275 (6th Cir. 2010). Thus, considering the consistently normal objective evidence, the ALJ did not err by not ordering further testing because the evidence was sufficient to determine Plaintiff was not disabled. *See* 20 C.F.R.

§ 404.1520b (an ALJ may re-contact medical sources where the evidence is insufficient to reach a conclusion on disability).

Also, Plaintiff argued that since Dr. Bradford's opinion was the only one in the record, the ALJ was required to credit all the restrictions within it. This is inaccurate; to require an ALJ to base her RFC finding on a physician's opinion would constitute "an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th Cir. 2013). Rather, it is the ALJ's sole responsibility to determine the RFC, *see Poe*, 342 F. App'x at 157, and she does this through an evaluation of the medical opinions and evidence of the record. An ALJ is entitled, and required, to consider all of the evidence in the record. § 404.152(a)(3). Thus, the ALJ did not commit error when she compared and weighed Dr. Bradford's restrictions against the normal objective findings in both the record and her report. *See* § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").

Lastly, Plaintiff noted the ALJ did not address other restrictions contained in Dr. Bradford's opinion: particularly, that she could never kneel, crouch, or crawl; could occasionally push/pull and climb stairs or ramps; and could not be around unprotected heights or moving mechanical parts. (Tr. 539-41). Plaintiff is correct that these restrictions are not included in either the RFC or specifically refuted in the ALJ's discussion of Dr. Bradford's opinion; however, the ALJ did discount the weight of Dr. Bradford's opinion, finding it gave "undue weight to [Plaintiff's] subjective reporting" and was contrary to the normal objective findings. (Tr. 21).

"The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, at *7; *see also Moretti v.*

10

*Colvin*, 2014 WL 37750, at *10-11 (N.D. Ohio). Yet, when the ALJ discounts the opinion from which the limitation is derived then the ALJ need not discuss each functional limitation contained therein. *See Lewis v. Colvin*, 2015 WL 6160195, at *7-9 (M.D. Tenn); *see also* SSR 96-8p; *Delgado v. Comm'r of Soc. Sec.*, 30 F.App'x 542, 547 (6th Cir. 2002) (noting there is a difference between "what an ALJ must consider and what an ALJ must discuss in a written opinion."). Further, where the necessary evidence and analysis is contained within the decision, it may be shown that an ALJ implicitly resolved conflicts based on the opinion as a whole. *Karger. v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749, 753 (6th Cir. 2011); *see also Vaughan v. Comm'r of Soc. Sec.*, 2013 WL 453275, at *11 (N.D. Ohio) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Here, some of the identified functions are not even required to perform the position of housekeeper as stated by the VE. (Tr. 50); *see* DICOT 323.687-014 Cleaner, Housekeeping (any industry), 1991 WL 672783 (4th ed. 1991). The Dictionary of Occupational Titles specifically states activities involving climbing, crawling, unprotected heights, and moving mechanical parts are not contemplated by this position. *Id.*; *see also* SSR 83-14, 1983 WL 31254, at *5 (finding climbing abilities "have very little or no effect on the unskilled light occupational base."). Thus, the ALJ's exclusion of these specific limitations had no effect on Plaintiff's potential job base, such that if remanded, the ALJ would not even have to obtain VE testimony as to the effect of these restrictions. *Tait v. Comm'r of Soc. Sec.,* 2014 WL 4187942, at *21-22 (E.D. Mich.).

Yet, Dr. Bradford's opinion with regard to Plaintiff's ability to kneel, crouch, and push/pull is relevant to the position; and the ALJ was required to discuss that opinion, which she did – albeit in general terms. The ALJ discounted the weight of Dr. Bradford's opinion because she found Plaintiff to be not entirely credible and there was a lack of objective evidence to support her restrictions. Plaintiff has not challenged the ALJ's credibility determination nor has she

11

offered contrary objective evidence which rebuts the ALJ's citation to a plethora of normal musculoskeletal findings over the past ten years; both of which are relevant to determination of why the ALJ did not credit these restrictions.

Upon review of the record, the Court can find no evidence that Plaintiff ever alleged difficulties in these functional abilities and her activities of daily living, specifically her ability to bathe, do laundry and light cleaning, drive, and attend church and Bingo, undermine an inability to perform these functions. Further, Dr. Bradford's own records do not provide support for the restrictions; her strength and range of motion testing was all normal, save for reduced range of motion in Plaintiff's low back; and Dr. Bradford provided no medical findings or reasoning to support these opined restrictions, despite being prompted to do so. (Tr. 533-36, 539-40). Thus, the factual circumstance explained in the ALJ's opinion provided implicit reasoning that the Court could follow to discredit Dr. Bradford's restrictions. *See Thompson v. Comm'r of Soc. Sec.,* 2014 WL 2949364, at *15-17 (N.D. Ohio).

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI is supported by substantial evidence, and therefore affirms the decision of the Commissioner.

 s/James R. Knepp II  
United States Magistrate Judge